## A03A1078. REVIS et al. v. JOWERS et al.
(589 SE2d 657)

JOHNSON, Presiding Judge.

Patsy Jowers Revis and her husband, Lee Revis, appeal from the trial court's judgment declaring that Patsy Revis no longer has a legal interest in real property conveyed to her by her mother, and granting an injunction prohibiting the Revises from trespassing on the property. We affirm the judgment of the trial court.

In 1979, Evelyn Jowers conveyed by warranty deed 388 acres of real property to her two children, Patsy Jowers Revis and Donaldson Jowers, giving them each an undivided one-half interest in the property, while reserving for herself a life estate. Most of the land was used for pine tree farming, though 70 acres were rented out and used for cotton farming. The warranty deed provided, in part, that all income from the operation of the farm and the sale of timber from the property would be divided equally between Evelyn Jowers, Donaldson Jowers, and Patsy Revis.

In 1986, Patsy Revis conveyed her one-half undivided interest in the real estate by security deed to Broxton State Bank as collateral for a loan. She defaulted on the loan. Evelyn Jowers then made payments on the note and paid it off in full. In March 1989, the bank

[6] OCGA § 48-2-49 (b).
[7] OCGA § 48-3-21.

assigned the note and transferred and assigned by security deed all of its interest in the promissory note to Evelyn Jowers.

In August 1989, an attorney for Evelyn Jowers sent Patsy Revis a certified letter demanding that she pay in full, to her mother, the note she executed in favor of the bank in 1986. Patsy Revis claims she did not respond to the demand letter because she relied on her mother's earlier oral promise that she would use Patsy Revis' one-third share of the farm and rent proceeds to pay the debt.

In September 1989, Evelyn Jowers, as holder of the note and deed to secure debt, exercised her right to foreclose on the real estate in the security deed and purchased all of Patsy Revis' interest in the property at the foreclosure sale.

In February 2001, Evelyn Jowers conveyed to Donaldson Jowers all of her interest in the real property, reserving for herself a life estate.

The Jowerses filed a declaratory action against the Revises, seeking a declaration that Patsy Revis would not have an interest in the property after Evelyn Jowers' death. The Jowerses also sought injunctive relief on the ground that the Revises were interfering with their right to use their land. According to the Jowerses, the Revises have removed fences from the property, fired shotguns, trespassed upon the Jowerses' property, and verbally abused, harassed, and intimidated the Jowerses and their agents.

In defense, the Revises urged that the deed to secure debt which Patsy Revis executed in favor of the bank was not valid because it did not bear the signatures of the two other property owners, Evelyn and Donaldson Jowers. The Revises filed a counterclaim alleging that Evelyn Jowers committed fraud by purchasing Patsy Revis' interest in the property at the foreclosure sale after orally promising to keep Patsy Revis from losing her interest in the land, and moved to set aside the deeds transferring the property to the Jowerses.

The trial court held that because Patsy Revis conveyed any interest she had in the real estate to a bank as collateral for a loan and then defaulted on the note and security deed, her interest in the real estate was properly foreclosed upon and purchased by Evelyn Jowers. Therefore, the court held, Patsy Revis no longer owns any interest in the real estate. The court also permanently enjoined the Revises from trespassing on the property at issue.

1. The Revises contend that the trial court erred in holding that Patsy Revis' interest in the property was properly foreclosed upon and purchased by Evelyn Jowers. Specifically, they claim Evelyn Jowers fraudulently obtained title to Patsy Revis' interest in the land by falsely representing to Patsy Revis that if she would dismiss a pending bankruptcy action, Evelyn Jowers would help Patsy Revis keep her interest in the land by paying the loan with the daughter's

share of the proceeds from the farming operations and tenant rent. According to the Revises, Evelyn Jowers did use the proceeds to help pay the note, but then purchased the property for herself at foreclosure. There was no error.

The record shows that Evelyn Jowers obtained title to the land by purchasing it at the foreclosure sale when Patsy Revis failed to make the payments required under the promissory note and security deed. Patsy Revis was notified of the foreclosure sale but did not object. Patsy Revis no longer had a valid interest in the property, and the trial court properly awarded judgment to the Jowerses on the issue of whether Evelyn Jowers had valid title to the property.

As for the Revises' argument that Evelyn Jowers promised to make payments in order to preserve Patsy Revis' interest in the land, we note that any contract for the sale of lands, or any interest in or concerning lands, must be in writing.[1] A promise to answer for the debt or default of another, or an agreement that is not to be performed within a year, must also be in writing.[2] Evelyn Jowers' alleged oral promise to prevent Patsy Jowers from losing her interest in the real estate is unenforceable under the statute of frauds.

Moreover, to establish fraud, the Revises would have to present evidence to support each of the following five elements: a false representation by Evelyn Jowers, scienter, intent to induce Patsy Revis to act or refrain from acting, justifiable reliance by Patsy Revis, and damage.[3] Patsy Revis did not present evidence showing that the mother made a false statement and made it with false design.[4] Nor did she present evidence that she lost her interest in the land as a result of her mother's alleged oral promise. While Patsy Revis implies that she could have kept the property had she not dismissed her bankruptcy petition, there is no evidence in the record to support such an implication. In fact, Patsy Revis asserted that the bankruptcy trustee was contemplating seizing and selling her interest in the property. The evidence clearly shows that Patsy Revis pledged her interest in the property as collateral for a loan, and lost that interest because she defaulted on the loan. This enumeration is without merit.

2. The Revises contend the "doctrine of unclean hands" does not bar their counterclaim, inasmuch as they received no benefit from Patsy Revis' alleged misconduct, her mother's conduct was driven by

---

[1] OCGA § 13-5-30 (4); see *Allen v. Tucker Fed. Bank*, 236 Ga. App. 245, 246 (1) (510 SE2d 546) (1999) (a bank's oral promise to reinstate a mortgage is tantamount to a transfer of an interest in real property subject to the statute of frauds, requiring a written agreement).

[2] OCGA § 13-5-30 (2), (5).

[3] See *Aliabadi v. McCar Dev. Corp.*, 249 Ga. App. 309, 311 (1) (547 SE2d 607) (2001).

[4] See id. at 312.

a desire to defraud Patsy Revis, and her mother's misconduct was more egregious than hers. There is nothing in the trial court's order indicating that it based its decision on the unclean hands doctrine. Instead, the trial court expressly based its decision on the fact that Patsy Revis pledged her interest in the property as collateral for a loan, then defaulted on the note and lost the property through foreclosure. The Revises having shown no error on the record, this enumeration presents no basis for reversal.[5]

3. The Revises contend the trial court erred in granting the injunctive relief sought by the Jowerses when the Jowerses failed to prove the allegations of the complaint which would have supported their request for injunctive relief. In its order, the trial court enjoined the Revises from trespassing on Evelyn and Donaldson Jowers' property, tearing down fences, and entering the property to abuse, harass, or intimidate the owners or their agents. There was evidence that in 2000 or 2001 the Revises threatened to remove a fence from the property and that they followed through on their threat, that they harassed Donaldson Jowers and a helper who were working on a dam on the property, that when the Jowerses were out on the property one night the Revises (who still lived on one acre of land given to Patsy Revis by Evelyn Jowers) started shooting guns and hollering at them, and that when Donaldson Jowers was operating a backhoe on the property, someone fired a shotgun several times. The Jowerses maintain that these incidents have caused them and their agents to be afraid to go upon the property. The evidence was in dispute, so it was appropriate for the trial court to exercise its discretion in ruling on the motion for injunctive relief.[6] There has been no evidence of a manifest abuse of such discretion or error of law.[7]

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED NOVEMBER 6, 2003.

*Galen A. Mirate*, for appellants.
*Keith H. Solomon*, for appellees.

---

[5] See *Branton v. Draper Corp.*, 185 Ga. App. 820, 825 (5) (366 SE2d 206) (1988) (in the absence of evidence to the contrary, we will presume trial court properly discharged its duties and applied correct legal standard).

[6] See *City of Duluth v. Riverbrooke Properties*, 233 Ga. App. 46, 56 (4) (502 SE2d 806) (1998).

[7] Id.